IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**HAROLD S.,**

    **Plaintiff,**

vs.                                                        **CIVIL ACTION NO. 5:24-CV-00004**

**MARTIN J. O'MALLEY,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered January 3, 2024 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 5, 6)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** the Plaintiff's request for remand (ECF No. 5), **DENY** the Defendant's request to affirm the decision of the Commissioner (ECF No. 6); **REVERSE** the final decision of the Commissioner; and **REMAND**

this matter back to the Commissioner for further administrative proceedings for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed his application for DIB in October 2020 alleging disability beginning January 13, 2019 due to spondylosis, prediabetes, cataracts, high blood pressure, high cholesterol, arthritis, sleep apnea, and diverticulitis. (Tr. at 10, 175, 190) His claim was initially denied in May 2021 and upon reconsideration in April 2022 (Tr. at 10, 52-67, 69-75). Thereafter, the Plaintiff filed a written request for hearing on May 18, 2022 (Tr. at 101-102).

An administrative hearing was held on January 10, 2023 before the Honorable Francine Serafin, Administrative Law Judge ("ALJ") (Tr. at 35-51). On May 24, 2023, the ALJ entered an unfavorable decision (Tr. at 7-27). On November 3, 2023, the Appeals Council denied the Plaintiff's Request for Review, thus, the ALJ's decision became the final decision of the Commissioner (Tr. at 1-6).

On January 2, 2024, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed a Brief in support of his complaint (ECF No. 5); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 6), to which the Plaintiff filed his Reply Brief (ECF No. 7). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 60 years old as of the alleged onset date, and therefore considered a

"person closely approaching retirement age" throughout the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 52) He completed four years of college and had past relevant work as a parts inspector and a teacher. (Tr. at 191-192, 19)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms

of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information;

interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.
(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

<u>Id</u>. § 404.1520a(e)(4).

**<u>Summary of ALJ's Decision</u>**

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements ("DLI") through March 31, 2024. (Tr. at 13, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because he had not engaged in substantial gainful activity since the alleged onset date of January 13, 2019. (<u>Id.</u>, Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: spondylosis; osteoarthritis; and diverticulitis. (<u>Id.</u>, Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 through her DLI. (Tr. at 15, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work except

> he can occasionally climb ramps and stairs; he can occasionally climb ladders, ropes, or scaffolds; he can frequently balance, stoop, kneel, and crouch; and he can occasionally crawl. He is capable of tolerating occasional exposure to extreme cold, heat, vibration, and atmospheric conditions as that term is defined in the Selected Characteristics of Occupations (SCO) as well as any workplace hazards such as moving machinery or unprotected heights.

(Tr. at 16, Finding No. 5)

At step four, the ALJ found the Plaintiff was capable of performing his past relevant work as a parts inspector as generally performed and as a teacher as generally performed. (Tr. at 19, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability from January 13, 2019 through the date of the decision. (Tr. at 20, Finding No. 7)

**Plaintiff's Challenges to Commissioner's Decision**

The Plaintiff argues that that ALJ's fourth step finding is contrary to law because no mental limitations were included in the RFC determination, and the ALJ failed to provide an explanation why they were omitted, thus frustrating meaningful judicial review. (ECF No. 5 at 3-11) The Plaintiff asks the Court to reverse and remand for further administrative proceedings. (Id. at 11)

In response, the Commissioner contends that the ALJ reasonably explained why the Plaintiff's non-severe mental impairments did not result in work-related functional limitations, noting the ALJ's analysis set forth in the RFC assessment, and how the evidence supported only mild limitations in all four broad areas of mental functioning; in sum, the ALJ's finding the Plaintiff's mild limitations did not preclude him from returning to his semi-skilled and skilled past relevant work was a reasonable conclusion. (ECF No. 6 at 8-15) The Commissioner asks this Court to affirm the final decision because it is supported by the substantial evidence. (Id. at 16)

In reply, the Plaintiff reasserts his arguments set forth in his initial brief, and highlights that the Commissioner does not even acknowledge or discuss this Court's holdings in several prior cases that came before it (ECF No. 7).

**Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

**The Medical Record:**

<u>Mental Impairments:</u>

The record shows the Plaintiff had visited New River Health Association three times to address mental health concerns: the first visit in October 2022 was to establish care for his depression, anxiety, and insomnia (Tr. at 710). The Plaintiff complained of sadness, poor focus, low energy, and decreased motivation, but reported that his anxiety was "under fair control," his mood was "stable overall," and he "[did] not feel that any mood swings are out of control" (<u>Id</u>.). On examination, he was alert and oriented, denied feelings of hopelessness or helplessness, denied suicidal or homicidal ideations, denied hallucinations, and denied racing thoughts or mania; his speech, eye contact, psychomotor activity, remote memory, mood, affect, judgment, and insight were normal; and his intelligence was average (Tr. at 710-711). The Plaintiff was diagnosed with "mild recurrent major depression" and generalized anxiety disorder, and his provider prescribed Zoloft and encouraged Plaintiff to use his CPAP machine nightly (Tr. at 711-712).

At a follow-up appointment in November 2022, the Plaintiff reported that he had been taking his medications and had "seen a significant improvement in his overall mood and level of depression with the medication" (Tr. at 809). Although the Plaintiff reported continued fatigue and poor focus, he "denie[d] any concerns regarding increasing sadness/depression" (<u>Id</u>.). His provider also noted that his anxiety "[f]luctuates with stressors but is manageable at this time" (<u>Id</u>.). The Plaintiff again had a normal mental status examination, and his provider wrote that he should continue with his previously prescribed dose of Zoloft (Tr. at 809-810).

The Plaintiff's third and final visit concerned another follow-up in March 2023, where he reported that he felt that he was "stable on his medications" (Tr. at 813). Although he reported that

his focus/concentration was "not optimal at all times," he also stated that it "does not interfere with work/social functioning" (Id.). He again reported that his anxiety was stable, and he had an overall normal mental status examination (Tr. at 813-814). The Plaintiff's provider did not make any changes to his treatment regimen (Tr. at 814).

Mental status examinations elsewhere throughout the record were also overwhelmingly normal, noting that the Plaintiff was alert, oriented, and cooperative, and had normal mood, speech, affect, thought process and content, average intelligence, and appropriate judgment and insight (Tr. at 351, 383, 387, 391, 394, 397, 534, 544, 550, 564, 568, 573, 578, 583, 621, 722).

**The Plaintiff's Function Reports:**

The Plaintiff submitted to Adult Function Reports in support of his application for benefits: in the first report, he reported that his physical impairments caused the majority of his difficulties functioning, but he could drive and go out alone, shop by phone, manage his own money, watch tv, and spend time with his wife and other family members (Tr. at 205-209). In the section labeled "Information About Abilities," the Plaintiff alleged that his mental impairments only affected his ability to complete tasks (Tr. at 210). Although he reported difficulty remembering details and a limited ability to handle stress, he stated that he had no problems with authority figures (Tr. at 210-211). In the second report, the Plaintiff made largely the same statements, although he now also wrote that his impairments affected his memory and concentration (Tr. at 233-246).

**The Administrative Hearing:**

<u>Plaintiff's Testimony:</u>

The Plaintiff testified that he is unable to work due to his physical impairments (Tr. at 39-40). When asked about his depression and anxiety, the Plaintiff responded that his mood was

9

affected by his inability to engage in physical activity with his family (Tr. at 40, 44). The Plaintiff also stated that he "ha[s] trouble being in public" (Tr. at 45).

<u>Vocational Expert's Testimony:</u>

The vocational expert categorized the Plaintiff's past work as a parts inspector (SVP 4), and as a teacher (SVP 7) (Tr. at 46). The ALJ then posed a hypothetical scenario to the vocational expert including the following limitations:

> [The] individual would be capable of performing work at the medium exertional level as defined under the regulations with the following limitations. The individual could occasionally climb ramps and stairs, occasionally climb ladders, ropes or scaffolds, could frequently balance, stoop, kneel, crouch and occasionally crawl. The individual would be capable of tolerating occasional exposure to extreme cold, heat, vibration, atmospheric conditions as that term is defined in the Selected Characteristics of Occupations, as well as any workplace hazards such as moving machinery or unprotected heights.

(Tr. at 47). The vocational expert responded that the hypothetical individual would be capable of the Plaintiff's past work (Id.). The ALJ then asked the vocational expert whether changing the exertional level in the hypothetical from "medium" to "light" would affect the ability to do the Plaintiff's past work, and the vocational expert replied that such an individual would be able to perform the parts inspector and assembly supervisor jobs, but not the teacher job (Tr. at 47-48). The vocational expert also listed three other jobs in the national economy that such an individual would be able to perform, including retail marker, photocopying machine operator, and folding machine operator, all unskilled positions (Tr. at 48).

Finally, the ALJ asked the vocational expert how many absences per month would be tolerated by employers, and the vocational expert replied that two or more absences per month would preclude full-time employment (Id.).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

The RFC determination is the "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work setting despite her functional limitations. See 20 C.F.R. § 404.1545(a)(1). The RFC is an administrative finding within the ALJ's exclusive jurisdiction. See Id. § 404.1546(c); see also Id.

§ 404.1520c(a) (instructing that ALJs will not defer to medical opinions or prior administrative medical findings). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. Id. § 405.1545(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5.

There is no dispute between the parties as to the ALJ's finding that the Plaintiff's mental impairments were non-severe, and that he had mild limitations in all four areas of mental functioning.[2] (Tr. at 13-15) Notwithstanding the Plaintiff's contention that the ALJ failed to incorporate these limitations into the RFC assessment, this District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment. See *Elaine M. v. Kijakazi*, No. 3:23-cv-00328, 2023 WL 6368980, at *8 (S.D. W. Va. Sept. 7, 2023), *report and recommendation adopted sub nom.*, 2023 WL 6368228 (S.D. W. Va. Sept. 28, 2023) ("[T]his District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment") (citing *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021); *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D. W. Va. May 21, 2021) (citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (noting even a claimant's "moderate limitation in concentration, persistence, or pace at step three" may not "affect [her] ability to work" and thus "does not translate into a limitation in [her RFC]")), *report and recommendation adopted*,

---

[2] 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00F(2)(b) provides that a "mild limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."

2021 WL 5230987 (S.D. W. Va. Nov. 9, 2021); see also, *Perry v. Colvin*, No. 2:15-cv-01145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016) ("[A]lthough some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations . . ."); Britt v. Saul, 860 Fed.Appx. 256, 262 (4th Cir. 2021) ("While the administrative law judge did not specifically address [the plaintiff's non-severe impairments] in the residual-functional-capacity analysis, neither our caselaw nor the regulations explicitly require this. The judge is only required to *consider* these non-severe impairments.") (*emphasis* in original).

At step two, the ALJ stated, "[t]he undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (Tr. at 13)

The ALJ then reviewed the evidence as it related to the Plaintiff's alleged mental issues, noting the observations of his providers and his own statements gleaned from his Adult Function Reports, detailed *supra*, determined that the Plaintiff's mental impairments were not severe, and causing only mild limitations in all four broad areas of mental functioning (Tr. at 14-15).

The undersigned recognizes the Plaintiff's argument that this case presents the same defects as those presented in other cases before this Court, such as: *Shank v. Saul*, 3:20-cv-00444, 2021 WL 2467063 (S.D.W. Va. Jun. 11, 2021)(Eifert, M.J.), *report and recommendation adopted*, 2021 WL 2744550 (S.D.W. Va. Jul. 1, 2021)(Chambers, J.); *Jones v. Kijakazi*, No. 5:21-cv-00634, (S.D.W. Va. Sept. 22, 2022)(Eifert, M.J.), *report and recommendation adopted*, (S.D.W. Va. Nov. 28, 2022)(Volk, J.); *Karen W. v. Kijakazi*, No. 2:23-cv-00044, 2023 WL 6289991 (S.D.W. Va. Jul. 31, 2023), *report and recommendation adopted*, 2023 WL 6282856 (S.D.W. Va. Sep. 26,

13

2023)(Johnston, C.J.); *Brenda H. v. O'Malley*, 2024 WL 561185 (S.D.W. Va. Jan. 26, 2024), *report and recommendation adopted*, 2024 WL 559602 (S.D.W. Va. Feb. 12, 2024)(Berger, J.); and *Mary S. v. Kijakazi*, No. 2:23-cv-00302, 2023 WL 9007315 (S.D.W. Va. Aug. 24, 2023), *report and recommendation adopted*, 2023 WL 9004929 (S.D.W. Va. Dec. 28, 2023)(Johnston, C.J.). (See ECF No. 5 at 7) Following a thorough review, the undersigned finds this case shares similarities from the aforementioned recent decisions in which this Court found the ALJ's lack of explanation to exclude mental functional limitations in the RFC warranted remand. In this case, the discussion of the Plaintiff's mental impairments did not proceed beyond step two, just like in the *Shank* matter and the other cases that followed, *supra*.

Indeed, the undersigned previously noted in *Brenda H.*, *Mary S.*, *Karen W.*, just like in *Shank* and *Jones*, the ALJ here did not go beyond affixing the boilerplate concerning "paragraph B" criteria: while the ALJ acknowledged the mild limitations did not constitute an RFC assessment, and would "require a more detailed assessment" at subsequent steps in the sequential evaluation process, the ALJ never followed through on this. Further, there is no explicit or express finding by the ALJ in this case that the Plaintiff's mild limitations did not result in *any* work-related limitations. See *Wall*, *supra*. Although the ALJ provided an adequate explanation for why the Plaintiff has mild limitations in all four areas of mental functioning, there is no explanation for omitting them from the RFC assessment, necessarily resulting in the undersigned having to speculate as to why, thus frustrating meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). Accordingly, the undersigned **FINDS** the RFC analysis is not supported by substantial evidence, as it lacks any explanation for omitting the Plaintiff's mild mental limitations as set forth in step two.

Finally, the undersigned **FINDS** the final decision of the Commissioner denying benefits is not supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **GRANT** the Plaintiff's request for remand (ECF No. 5), **DENY** the Defendant's request to affirm the decision (ECF No. 6), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings so that the ALJ may further consider any work-limiting effects from the Plaintiff's mental impairments.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106

S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: May 7, 2024.



Omar J. Aboulhosn
United States Magistrate Judge